IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC DEAN HANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-CV-147-GLJ |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration | ) |
| | ) |
| Defendant. | ) |

# OPINION AND ORDER

Claimant Eric Dean Hanson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton*, 79 F.3d at 1009. The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account

---

[2] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was forty-six years old at the time of the administrative hearing. (Tr. 160). He obtained his GED, attended some college, and has no past relevant work. (Tr. 161, 370). Claimant alleges an onset date of June 4, 2019, due to limitations imposed by major depressive disorder, PTSD, sleep apnea, and arthritis. (Tr. 369).

## Procedural History

On February 26, 2021, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 205, 328). On November 17, 2022, ALJ Benjamin Chaykin held an administrative hearing and determined Claimant was not disabled on January 9, 2023. (Tr. 133-46, 154). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-7); *See* 20 C.F.R. § 404.971.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. (Tr. 33-34). He found that Claimant had no medically determinable impairments because there was no medical evidence indicating Claimant received treatment between Claimant's alleged onset date of June 4, 2019, through the date last insured, September 30, 2019. (Tr. 136-37). Alternatively, the ALJ determined Claimant had the medically determinable impairments of sleep apnea, obesity, bilateral knee osteoarthritis, hemorrhoids, lumbar spine degenerative disc disease, bilateral tinnitus, depression, and posttraumatic stress disorder

(PTSD). But that none of these impairments, or a combination thereof, were severe as they had not significantly limited Claimant's ability to perform work-related activities for twelve consecutive months. (Tr. 137). Thus, the ALJ determined Claimant was not disabled. (Tr. 145).

## Review

Claimant contends that the ALJ erred by: (1) not supporting his conclusion that Claimant did not have a medically determinable impairment during the relevant time period with substantial evidence; (2) not supporting his alternative determination that none of Claimant's medically determinable impairments were severe with substantial evidence; and (3) failing to properly assess the consistency of medical opinions from Dr. Carlos Rodriguez, Ph.D, and Dr. Dana C. Oyler, D.O. The Court agrees with all three propositions. Thus, the Commissioner's decision must be reversed, and the case remanded to the ALJ for further proceedings.

The relevant medical evidence reveals that Claimant is an army veteran who served in the Iraq War, engaged in combat, and was discharged from the Army in 2011. (Tr. 176, 490, 1530, 1540). In September 2008, Claimant was hospitalized for four days at the Taliaferro Community Mental Health Center following a suicide attempt, and was diagnosed with "Bipolar I disorder, depressed." (Tr. 622). Shortly after being released from Taliaferro, Claimant visited the Reynolds Army Community Hospital Mental Health Clinic on September 22, 2008, where he endorsed ongoing suicidal ideation and was assessed with "adjustment disorder with anxiety and depressed mood" in addition to personality disorder. (Tr. 611-27). Claimant was then admitted to Red River Hospital for a forty-two

day stay during which time he was diagnosed with major depressive disorder, recurrent with psychotic features. (Tr. 607, 611, 614). Thereafter, Claimant attended anger management, psychiatric evaluations, and mental health counseling to treat his adjustment disorder and depression until 2010. (Tr. 573-614, 668-765, 1374-1459). In January 2010, psychologist, Patricia Brandon Ph.D., diagnosed Claimant with dysthymic disorder (depressive disorder), indicated Claimant had repetitive cycles of impaired functioning and "chronic limited intellectual resources," and recommended Claimant be separated from the military as he had reached maximum psychiatric benefit but could not sustain an acceptable level of functioning. (Tr. 1366-69). Following his separation from the army in 2011, Claimant sought only sporadic treatment for his mental impairments. He sought treatment for depression, extreme anxiety, and anger issues for a three-month period in 2019. (Tr. 1141-53). In 2017, Claimant was provisionally diagnosed with PTSD and it was recommended that Claimant attend psychotherapy appointments. (Tr. 1216-21).

In September 2017 Dr. Carlos Rodriguez, Ph.D., reviewed Claimant's VA file and conducted a psychiatric evaluation of Claimant for the condition of major depressive disorder with psychotic features and concluded that Claimant met the diagnostic criteria for major depressive disorder. (Tr. 1539). He further indicated Claimant exhibited "occupational social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, and/or mood." (Tr. 1535, 1539). Then, in February 2019, four months before Claimant's alleged onset date, Dr. Rodriguez conducted a second psychiatric evaluation of Claimant for the condition of major depressive disorder with psychotic features. (Tr. 1533-39). Again, Dr. Rodriguez found Claimant's major

depressive disorder resulted in occupational and social impairments, particularly noting that Claimant's "claimed disability of depression significantly impairs his ability to engage in basic work-related activities including understanding, memory, sustained concentration, persistence and pace, social interaction, and adaptation to job changes is significantly impaired." (Tr. 1528-32). On June 4, 2019, Claimant's alleged onset date, the Department of Veterans Affairs determined Claimant's major depressive disorder with psychotic features to be 100% disabling with an effective date of January 4, 2019. (Tr. 326). Claimant established care at a VA clinic in Adair, Oklahoma and reported he had ceased all psychiatric medications, and used only marijuana to treat his conditions. (Tr. 1104, 1501).

As to physical impairments, Claimant began visiting a physical therapist in early 2009 seeking treatment for bilateral knee pain and bilateral shin splints where he presented with a mildly antalgic gait. (Tr. 516-17). In December 2009, he was assessed with impaired joint mobility, motor function, and muscular performance secondary to osteoarthritis of both knees. (Tr. 516-17). Thereafter, Claimant engaged in physiotherapy on a regular basis but was making "slow progress" and not responding to conservative treatment. (Tr. 532-48, 1294-96). A March 2010 MRI of Claimant's knees revealed tiny joint effusions in both knees but was otherwise negative for abnormalities. (Tr. 887-89). X-rays of Claimant's knees in October 2010 revealed bilateral mild degenerative joint disease. (Tr. 881-882).

In December 2010, Dr. Oyler conducted a physical examination of Claimant and found both his knees exhibited tenderness and reduced range of motion but had no signs of edema, instability, abnormal movement, effusion, weakness, redness heat, deformity, guarding of movement, malalignment, or drainage. (Tr. 1544, 1549). X-rays at this time

revealed both knees were within normal limits. (Tr. 1544, 1547). Claimant's knees were again x-rayed in 2014 and this imaging revealed mild height loss in the medial joint of Claimant's left knee but preserved joint spaces in the right knee. (Tr. 1067-69).

State reviewing physicians determined initially and upon review that there was insufficient evidence to determine the severity of Claimant's conditions on or before September 30, 2019, the date last insured. (Tr. 202, 208).

At the administrative hearing, Claimant testified that the last two years of his military career consisted primarily of mental health counseling, and after his discharge in 2011, he continued to have issues controlling his anger. (Tr. 183-85). He indicated that in 2019 on an average day he would watch television, use marijuana, go on walks, occasionally golf, and assist with chores. (Tr. 172-76). Claimant also testified that he had difficulty being around other people and was unable to stand for long periods of time. (Tr. 191-92).

In his written opinion at step two, the ALJ extensively summarized Claimant's hearing testimony, discussed much of the medical evidence of record, but did not discuss any of Claimant's mental health treatment predating 2017. (Tr. 136-46). He then found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the treatment records. (Tr. 140). The ALJ found the opinions of the state agency medical and psychological consultants persuasive because their determination that there was insufficient evidence to establish a physical or mental impairment prior to the date last insured was consistent with the lack of treatment records during the relevant time period. (Tr. 142-43). Conversely, he found Dr. Oyler's December

27, 2010, opinion unpersuasive because "[w]hile supported by some explanation, with reference to exam findings with the claimant and the available treatment history at the time" the opinion is remote from the alleged onset date, and it is inconsistent with the lack of treatment. (Tr. 144). The ALJ also found Dr. Rodriguez's September 7, 2017, and February 21, 2019, psychological evaluations unpersuasive because both were "vague as to specific limitations. . . [and] not well supported by explanation with reference to specific exam findings[,]" in addition to being inconsistent with Claimant's lack of treatment during the relevant time period. (Tr. 143-44). Finally, he found the VA disability rating of 100% to be unpersuasive, noting that the opinion is not binding on the Social Security Administration, was not supported by an explanation or reference to signs, symptoms, or treatment, and was based on medical evaluations conducted prior to the Claimant's alleged onset date. (Tr. 143).

I. **Medically Determinable Impairments**

Claimant first challenges the ALJ's step two findings that he has no medically determinable impairments, and his alternative finding that none of Claimant's medically determinable impairments were severe, specifically asserting that he had the severe medically determinable impairments of major depressive disorder and bilateral knee osteoarthritis. "[A]n impairment will be deemed 'medically determinable' if it is 'established by objective medical evidence from an acceptable medical source,' (i.e., through 'medically acceptable clinical and laboratory diagnostic techniques.')." *Rodriguez v. Saul*, 2020 WL 2329494, at *6 (D. N.M. May 11, 2020) (quoting 20 C.F.R. § 404.1521). Claimant has the burden of proof at step two to show that he has an impairment severe

enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137, 146-53 (1987). This determination "is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a *de minimis* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1998) (citing *Williams*, 844 F.2d at 754). A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. Although [e]vidence relating to a time outside the insured period is only minimally probative, [it] may be considered to the extent it illuminates a claimant's health before the expiration of his insured status." *Bowden v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1293314, at *4 (E.D. Okla. Mar. 21, 2019) (citing *Nagle v. Comm'r of Soc. Sec. Admin.*, 191 F.3d 452 (6th Cir. Sept. 21, 1999) (unpublished table opinion)); *Carnes v. Comm'r of Soc. Sec. Admin.*, 2022 WL 794707, at *4 (E.D. Okla. Feb. 24, 2022) (" If evidence' sheds light on the disability during the relevant time period[,]" it should be considered.") (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)).

In this regard, Claimant had a documented finding of major depressive disorder as far back as 2008. Although Claimant's treatment for his major depressive disorder is sporadic after 2011, only four months before Claimant's alleged onset date Dr. Rodriguez

found Claimant's major depressive disorder significantly impaired his ability to engage in work related activities, including understanding, memory, sustained concentration, persistence and pace, social interaction, and adaptation to job changes was significantly impaired in 2019. (Tr. 11526-39).). Additionally, Claimant's major depressive disorder was sufficiently established, as of Claimant's alleged onset date, to warrant a 100% disability rating by the VA. (Tr. 326). The Court is satisfied that this evidence meets Claimant's *de minimus* burden of showing a severe impairment at step two with respect to Claimant's major depressive disorder. The standards for evaluation at step two and step four are significantly different and should not be conflated. *See, e.g., Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("The evidence . . . showed that she . . . had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. Thus, under a *de minimus* standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence.") (internal citations omitted)).

As it pertains to Claimant's osteoarthritis, the ALJ likewise erred in his initial determination that Claimant's osteoarthritis was not a *medically determinable impairment* as the record reflects Claimant's bilateral knee osteoarthritis was first assessed in 2009 and confirmed by x-rays in 2010. (Tr. 516-17, 881-82). Although these medical records are remote from Claimant's alleged onset date, "'osteoarthritis is a progressive disease' for which "there is no cure." *Maddox v. Colvin*, 174 F. Supp. 3d 1252, 1257 (D. Colo. 2016) (citations omitted). This is sufficient to establish that Claimant had the medically

determinable impairment of osteoarthritis during the relevant time period. *See Anderson v. Comm'r of Soc. Sec. Admin*, 2021 WL 3168451, at *3 (D. Ariz. July 27, 2021) (finding ALJ erred in concluding claimant's osteoarthritis of the knee was not a medically determinable impairment because a pre-onset date MRI revealed degenerative changes in Claimant's knee.). Nonetheless, the ALJ did not err in his alternative finding that Claimant's osteoarthritis is not a *severe* medically determinable impairment because, unlike Claimant's major depressive disorder, *all* of the medical records relating to Claimant's osteoarthritis were many years removed from Claimant's alleged onset date, and the record does not reflect that Claimant's osteoarthritis had more than a minimal effect on his ability to work during or near the alleged onset date through the date last insured. C*owan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (providing that for a claimant to meet his burden at step-two, "a showing of the mere presence of a condition is not sufficient."); *Hinkle*, 132 F.3d at 1352 (same).

    **II.**    **Medical Opinions of Dr. Oyler and Dr. Rodriguez.**

Next, Claimant argues the ALJ erred in evaluating the medical opinions of Dr. Oyler and Dr. Rodriguez. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant

(including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) and (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(3). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In this instance, the ALJ failed to properly assess the consistency of Dr. Oyler's and Dr. Rodriguez's opinions. The ALJ concluded these opinions were inconsistent with Claimant's lack of treatment during the relevant time period, but in doing so, the ALJ ignored the *de minimis* standard at step two and further failed to engage with or evaluate any of the records that were consistent with Dr. Oyler's or Dr. Rodriguez's opinions such as Claimant's many years of mental health counseling, psychiatric visits, and x-rays

revealing Claimant's osteoarthritis, appropriately at this step. It was error for the ALJ to ignore substantial probative evidence when analyzing the consistency of Dr. Oyler's and Mr. Rodriguez's opinions and fail to credit it as consistent. *Hardman*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (internal citations omitted); *Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (internal citations omitted). For this reason, the decision of the Commissioner is not supported by substantial evidence. *Graham v. Kijakazi*, 2022 WL 947148, at *1 (E.D. Okla. Mar. 29, 2022) ("The Magistrate Judge found that correct legal standards were not applied by the Administrative Law Judge in failing to properly evaluate two medical source opinions and the decision of the Commissioner is therefore not supported by substantial evidence.").

Because Claimant met his burden of showing a severe impairment at step two, and the ALJ did not properly assess the consistency of Dr. Oyler's and Rodriguez's opinions, the decision of the Commissioner should be reversed, and the case remanded for further analysis. Upon remand, the ALJ should evaluate *all* the evidence in the record and properly evaluate Claimant's impairments, singly and in combination.

**Conclusion**

In summary, the Court finds that the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED and the case REMANDED for further proceedings.

**DATED** this 30th day of July, 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**